IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-02484-MSK-BNB

HIGH STREET LOFTS CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    Defendant.

---

OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to the parties' Joint Motion to Bifurcate **(# 12)**; and Defendant American Family Mutual Insurance Company's ("American Family") Motion for Summary Judgment **(# 21)**, Plaintiff High Street Lofts Condominium Association, Inc.'s ("High Street") response **(# 24)**, and American Family's reply **(# 31)**.

## FACTS

In May 2009, the City of Boulder began performing road repair work on Broadway near High Street's property, some of which involved the use of a vibrating compactor to compact and set the roadbed. Shortly after work began, representatives of High Street noticed damage to High Street's building and associated structures, such as cracks in walls, sloping of floors, and separation of porches from the building itself. Believing that such damage was the result of construction activities on Broadway, High Street contacted the City of Boulder, who, in turn, forwarded the complaint on to Concrete Express, Inc., the city's contractor on the road repair

1

project. On July 9, 2009, High Street filed a formal Notice fo Claim against Concrete Express, alleging that "due to defective work performed by Concrete Express, [High Street's building] has suffered structural and non structural damage including, but not limited to, foundation movement resulting in potential health and safety issues."

In or about late July 2009, High Street filed a claim with American Family, who had issued a business insurance policy to High Street. On September 2, 2009, American Family denied High Street's claim. American Family pointed to an opinion letter provided by engineer Glenn Frank, submitted by High Street as part of its claim. That letter appeared to indicate that the damage was the result of "soil consolidation/settlement," in response to the construction activities.[1] American Family also pointed to the opinion of Bill Hawkins, an expert retained by American Family to assess the claim. Mr. Hawkins concluded that the original foundation of the building was insufficient to "resist lateral loading conditions" that resulted from "the lateral shaking of the rubble foundations during the vibratory compaction of the roadway project." From this, American Family concluded that the "settlement" observed by Mr. Frank and the "lateral loading" (or "differential movement") observed by Mr. Hawkins "is a result of earth movement as a result of the construction activities." American Family pointed to two major policy terms that supported its conclusion. First, it noted policy language that excluded from coverage damages caused by "earth sinking . . . or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations." Second, it pointed to language,

---

[1] Although American Family's denial letter did not specifically quote this portion of Mr. Frank's report, Mr. Frank opined that "construction on Broadway is the likely cause of the observed damage" insofar as "the building and soils below the building were severely shaken – and in the case of the soils, consolidated – by heavy-duty construction equipment which repeatedly pounded the old pavement."

described by High Street in its brief as the "anti-concurrent cause" (or "ACC") term, that stated that "loss or damage [excluded by the language quoted above] is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Thus, although American Family acknowledged that "the City's street construction activities started in motion . . . damage to the building," it apparently concluded that "earth . . . shifting" was one of the causes of the damage and, by application of the anti-concurrent cause term, none of the damage was therefore covered.

In late September 2009, High Street commenced suit against Concrete Express in the Colorado District Court for Boulder County, alleging various claims sounding in the general common-law tort of negligence. That suit alleged that "equipment used by Concrete Express caused extensive vibrations to travel through the ground and into the building," causing damage. American Family points out that High Street expressly endorsed Mr. Hawkins – the engineer retained by American Family with regard to High Street's claim – as High Street's expert in the litigation. High Street's brief speaks of the Boulder litigation in the past tense, suggesting that it has been resolved, but the record does not indicate how, if at all, that litigation was concluded, other than High Street's statement that the suit did not result in "a verdict."

Thereafter, High Street commenced this action against American Family. It alleges __ claims for relief: (i) a request for a declaratory judgment addressing the question over policy coverage for the damage; (ii) breach of insurance contract; and (iii) violation of C.R.S. § 10-3-1115 *et seq.*, in that American Family unreasonably delayed or denied payment of benefits.

American Family moves for summary judgment **(# 21)** on each of High Street's claims, arguing that based on the undisputed facts in this case – namely, the position High Street has

3

taken in the Boulder lawsuit – the property damage is not covered under the terms of the policy. The Court will address the parties' arguments with regard to this issue as part of its analysis. Separately, the parties have moved (assuming the case survives American Family's motion) to bifurcate **(# 12)** the declaratory judgment claim from the breach claims, explaining that "a determination of whether there is coverage in the first instance under the American Family policy is necessary before the parties and the Court can determine whether and to what extent Plaintiff's remaining claims may proceed."

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Merits**

1. Factual issues

The crux of American Family's argument is that High Street's claims in the Boulder lawsuit expressly rely upon and adopt Mr. Hawkins' opinion that the damage to the property was caused by "earth movement as a result of the construction activities." Under these circumstances, American Family argues, the combination of the exclusion from coverage for

5

earth movement and the anti-concurrent cause language result in the damage falling outside the policy's coverage.[2]

High Street offers several arguments in response. First, it contends that there is a genuine dispute of fact regarding the cause of the damage to the building. It contends that there is an unsettled factual question as to whether "vibration from activities of Concrete Express alone caused any of the damage to the building, including . . . differential movement of the building versus the surrounding earth." It cites to the affidavit of High Street's principal, Mr. Burke, who "observed excessive vibration of the building itself and damage to numerous other buildings

---

[2]American Family offers alternative arguments for denial of coverage, including policy language excluding coverage for "settling, cracking, shrinking, or expansion" of property and an exclusion for damage caused by the negligence of another.

The negligence exclusion is undoubtedly bound up in genuine factual disputes, as Concrete Express' negligence remains disputed. American Family's argument here – that the Court should bind High Street to arguments it made in the Boulder litigation – appears to be invoking some form of judicial estoppel. But American Family fails to adequately address the elements of judicial estoppel, particularly the requirement that the party to be estopped gained some benefit from the factual position it now seeks to abandon. *See Arko v. People*, 183 P.3d 555, 560 (Colo. 2008). Without such a showing, the Court declines to hold High Street to the arguments it made in the Boulder litigation and instead accepts its argument that it can establish that Concrete Express was not negligent. This would bring High Street's claim outside the negligence exclusion in the policy.

As to the "settling, [etc.]" exclusion in the property, it is by no means clear how this exclusion interacts with the seemingly overlapping earth movement exclusion discussed herein. Both exclusions refer to "settling" and "cracking" of property, with the earth movement exclusion imposing additional terms that must be met before coverage will be denied while the "settling" exclusion apparently does not. The "settling" exclusion is a subset of a larger category of exclusions under the title "Other types of loss." This heading clearly indicates that its components are not intended to apply to losses that are arguably covered under prior, specifically-defined exclusions; to hold otherwise would be to render all of subparagraph (4) of the earth movement exclusion superfluous. Thus, the only reasonable interpretation of the standalone "settling" exclusion is that it is referring to "settling, [etc.]" that is caused by something other than earth movement (*e.g.* settling due to compaction or shrinking of building materials without corresponding soil movement or compaction). Accordingly, neither of the alternative policy provisions cited by American Family warrant the granting of summary judgment.

along Broadway," leading High Street to argue that "there is substantial evidence that some of the damage was caused purely by vibration of the building with no earth movement involved."

The Court confesses that it does not completely follow this particular argument. High Street contends that there was "vibration of the building" but "no earth movement." The parties appear to agree that High Street's theory is that Concrete Express was the ostensible source of any vibration. Thus, there had to be a medium through which the vibrations moved from Concrete Express' equipment to High Street's building. If that medium was not the earth, the only possible alternatives are a tangible physical object that coupled the building to the source of the vibrations (*e.g.* a beam or joist connecting the vibrating machine to High Street's building) or a means by which the vibrations traveled though the air (*e.g.* shock waves) to make contact with High Street's building. But none of the evidence put forward by High Street suggests that such an alternative medium conveyed the vibrations to the building; to the contrary, to the extent that any expert has opined that vibrations from Concrete Express' roadwork caused the building to vibrate, the movement of the earth is the only medium identified as conveying those vibrations.

It may be that High Street is arguing, somewhat inartfully, that the building was not actually damaged by <u>vibrations</u> at all. Somewhat ironically, High Street defends against American Family's motion in this case by embracing the opinions of Concrete Express' experts in the Boulder lawsuit. It points to opinions from Concrete Express that the true cause of the property damage has to do with "poorly performing historical foundations, disregard for geotechnical considerations [in the design and construction of the building and its additions], . . . lack of compaction of backfill around the subject structure, introduction of roof water in close proximity to the subject structure," and so on. In other words, High Street appears to adopt

7

Concrete Express' litigation position that the damage to the property was entirely the result of defective design and construction in the building itself and was unrelated to – indeed, would have occurred regardless of – Concrete Express' roadwork activities.

This strategy might be effective in blunting American Family's argument that the damage is not covered because of the earth movement exclusion, as the damage would thus be the result of poor construction, not earth movement. But such an argument is fundamentally inconsistent with representations that High Street has made throughout this case, both in its Complaint ("vibration of and movement of the building during the construction process was the apparent cause of the damage," *Docket* # 1-1, ¶ 6), Mr. Burke's affidavit ("Affiant observed damage to the building caused solely and immediately by the excessive vibration from the construction by Concrete Express," *Docket* # 24, Ex. 6 at ¶ 8), and High Street's arguments in its response brief ("Viewed in the light most favorable to Plaintiff, groundborne vibration was the cause of the damage to the building," *Docket* # 24 at 5). Thus, the Court declines to entertain an entirely new argument by High Street that the damage to the building was caused by something other than "groundborne vibration," clearly a synonym for "earth movement."

Accordingly, the Court finds that, for purposes of this motion, the facts taken in the light most favorable to High Street is that the property was damaged by ground vibrations caused by Concrete Express' work, which traveled through the earth and caused High Street's building to vibrate, leading to property damage.

    2. <u>Legal issues</u>

Having defined the essential underlying facts, the Court turns to the legal question of whether American Family's policy covers property damage arising in this circumstance.

Because this Court's subject-matter jurisdiction arises due to the diversity of citizenship of the parties, the Court applies Colorado's substantive law governing the interpretation of insurance policy language. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426-27 (1996). Under Colorado law, insurance policies are construed under the same traditional principles that govern the interpretation of any contract. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999).

When attempting to construe language in an insurance policy, the Court's ultimate goal is to ascertain and give effect to the reasonable expectations of the parties to the policy. *Pompa v. American Family Mut. Ins. Co.*, 520 F.3d 1139, 1143 (10th Cir. 2008). The strongest indication of the parties' reasonable expectations is the policy language itself, and thus, the Court's first step is to give effect to the plain and ordinary meaning of its terms, as those terms would be understood by a person of ordinary intelligence. *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009), *citing Farmers Ins. Exch. v. Dotson,* 913 P.2d 27, 30 (Colo. 1996); *Pompa*, 520 F.3d at 1143. Colorado applies the "reasonable expectations doctrine," requiring that the Court read the policy consistent with the understanding of "ordinary insured" would have of it. *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1048-51 (Colo. 2011). In other words, the Court construes the policy language not as the insurer intended it to mean, but according to what the ordinary reader and purchaser would have understood it to mean. *Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494, 496 (10th Cir. 1994). The same rules apply to provisions in insurance policies that exclude certain situations from otherwise available coverage; exclusionary terms must also be construed according to their plain and apparent meaning. *Worsham Contr. Co. v. Reliance Ins. Co.*, 687

9

P.2d 988, 990 (Colo. App. 1984). The Court must not construe terms of a policy in isolation; it must consider the policy as a whole. *Simon v. Shelter General Ins. Co.*, 842 P.2d 236, 239 (Colo. 1992).

When terms in a policy are susceptible to more than one reasonable interpretation, the Court must construe the ambiguous term against the drafter – the insurer – and in a manner that would promote, rather than deny, coverage. *Blackhawk-Central City Sanitation Dist. v. American Guarantee & Liab. Ins. Co.*, 214 F.3d 1183, 1191 (10th Cir. 2000). However, a term is not ambiguous simply because the parties disagree as to its meaning, or where hypothetical or abstract sets of facts create the potential of ambiguity. *Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 513 (Colo. App. 1996).

American Family's primary justification for denying coverage of High Street's claim is the "earth movement" exclusion. That provision reads:

> B. Exclusions
>
> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . .
>
> > b. Earth Movement
>
> (1) Earthquake, including any earth sinking, rising or shifting related to such event;
>
> (2) Landslide, including any earth sinking, rising, or shifting related to such event;
>
> (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;
>
> (4) Earth sinking (other than sinkhole collapse), rising, or shifting including soil conditions which cause settling, cracking or other

> disarrangement of foundations or other parts of realty. Soil
> conditions include contraction, expansion, freezing, thawing,
> erosion, improperly compacted soil and the action of water
> underlying the ground surface.
>
> [. . .]
>
> (5) Volcanic eruption, explosion or effusion . . . .

The Court turns first to the question of whether High Street's claim falls within any of the categories of exclusions listed here. The only provision even arguably applicable to this situation is subparagraph (4), which is somewhat of an un-grammatical maze. It begins by straightforwardly listing three verbs (technically verb-like gerunds) – "sinking," "rising," and "shifting" – each of which describes ways in which earth can move. Somewhat jarringly, the sentence then interposes a definitional term – "including" – without clearly indicating what term or terms are being defined. It proceeds to define one or more of the previous <u>verbs</u> with a <u>noun</u> phrase – "soil conditions." Because the paragraph later defines the noun phrase "soil conditions" to itself comprise "contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water underlying the ground surface," an ordinary insured attempting to understand the paragraph would simply substitute the definitional portion of the paragraph's second sentence for the term "soil conditions" in the first sentence, yielding a provision that purports to exclude coverage for "[e]arth sinking . . ., rising, or shifting including contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water underlying the ground surface . . . ."

This is somewhat of an improvement, although the object being modified by "including" is still unclear. An ordinary insured might then conclude that a given unit of earth can only move in a few different dimensions: it can "sink" or "rise" relative to its neighboring units, it can

"shift" either laterally or forward and backward compared to its neighbors, or it can "expand" or "contract" itself. The remaining terms – "freezing, thawing, improperly compacted soils and the action of [subsurface] water" – describe mechanisms that would <u>cause</u> the earth to move, not movements themselves. Finally, the terms "settling, cracking or other disarrangement of foundations" describe <u>damage</u> that might result when the earth moves as described. Thus, an ordinary insured might reasonably understand the exclusion in subparagraph (4) to exclude coverage for "settling, cracking or other disarrangement of foundations" of buildings (*i.e.* damage), when that damage results from the "sinking, rising, shifting, expansion, or contraction" of earth (*i.e.* movement), when that movement is caused by "freezing, thawing, erosion, improperly compacted soil, [or] the action of [sub-surface] water" (*i.e.* cause).[3] Those cases that interpret this identical policy language correctly speak of earth movement – sinking or shifting – being "caused" by mechanism identified as "soil conditions." *See Arkansas Valley Drilling, Inc. v. Continental Western Ins. Co.*, 703 F.Supp.2d 1232, 1241-42 (D.Colo. 2010) (slab movement as a result of a subsurface water pipe breaking – that is, that there was "earth sinking, rising or shifting," as a result of "the action of water under the ground surface"); *Ruede v. City of Florence*, 220 P.3d 113, 441-42 (Or.App. 2009) (erosion of soil under building slab due to water overflowing in underground culvert was "settling of [the] foundation" "caused by shifting soil conditions").

The Court then turns to the question of whether the damage to High Street falls within

---

[3] A reasonable policy holder would understand American Family's use of the word "includes" – soil conditions "includes" freezing, thawing, improper compaction, and subsurface water – to be closed-ended, as American Family gives no indication that it intends to also encompass other undisclosed conditions within the definition. The reasonable reading of the policy is thus that definition of "soil conditions" includes the four listed causes and no others.

such a provision. There is little dispute that, under High Street's version of events, it suffered "cracking" and "disarrangement of foundations" of its building. Moreover, such damage resulted from "vibrations" transmitted through the ground which would certainly constitute "shifting" of the earth beneath and around the building's foundation. However, it is not clear that the earth movement in question falls within the type of mechanisms contemplated by the exclusion – certainly, the vibrations did not cause damage through freezing, thawing, erosion, or the action of water, leaving only improper compaction of the soil as a basis for applying the earth movement exclusion.

It may be that American Family can ultimately show that the vibrations caused harm to High Street's buildings because the soil under and around the building's foundation was "improperly compacted" in such a way that the property was susceptible to damage from vibrations caused by Concrete Express; in such circumstances, it would appear that the exclusion would apply. On the other hand, High Street may ultimately be able to show that the soil <u>was</u> properly compacted, and the "shifting" of the earth due to the vibrations was not caused in part or whole by compaction defects; in such circumstances, none of the causal agents listed in subparagraph (4) would be responsible for the earth movement and thus, the exclusion would not apply. Because this determination depends on a factual finding that the record fails to address – the degree to which improper soil compaction allowed the vibrations to transmit earth movement to the building itself – the Court cannot grant American Family's motion and the matter must proceed to trial.

The parties approached this issue differently, arguing that the Court should construe the policy language consistently with one of several specific lines of cases. These cases raise issues

relating to whether earth movement exclusions should typically be read to encompass only earth movement resulting from natural, as opposed to man-made, forces; whether the presence of an anti-concurrent clause alters that analysis, and various other questions. The Court has reviewed all of the cases cited by the parties, as well as numerous additional cases resulting from the Court's own research, but ultimately finds each of these cases unhelpful. In each instance, courts sought to compare the policy language before them with the policy language examined in prior cases, either finding such language to be sufficiently similar or sufficiently distinct to warrant application or rejection of prior courts' interpretations. These analyses were often highly affected by minor variations in policy language, where a slightly different wording of the policy exclusion could lead to dramatically different outcomes. (Often times, strings of cases followed particular insurers, tracking that insurer's changes in its standard policy language over time. *See e.g. State Farm Fire and Cas. Co. v. Bongen*, 925 P.2d 1042, 1045-47 (Ak. 1996) (discussing evolution of State Farm's earth movement exclusion and discussing various cases interpreting it)).

Only a handful of cases interpret the particular, somewhat idiosyncratic policy language at issue here, and all of them involve application of subsurface water as the cause of the earth movement giving rise to the property damage. *Arkansas Valley*, *supra.*; *Ruede, supra.*; *Piankatank River Golf Club, Inc. v. Selective Ins. Co.*, 2009 WL 1024652 (E.D.Va. Apr. 15, 2009); *Amherst Country Club, Inc. v. Harleysville Worcester Ins. Co.*, 561 F.Supp.2d 138 (D.N.H. 2008). Because this case requires application of that portion of the exclusion that disclaims coverage for earth movement resulting from improperly compacted soil, cases involving subsurface water as the cause of earth movement are not particularly instructive.

14

Of these cases, only *Ruede* addresses an argument similar to that raised by High Street here – the argument that the earth movement exclusion applies only to naturally-occurring events that cause the earth to move. (*Ruede* finds that the inclusion of "improperly compacted soil" in the list of potential causes refutes such an argument. 220 P.3d at 442.) But ultimately, that argument is swept up by the Court's interpretation of the policy language. The exclusion is most naturally read to exclude coverage where there is a specific type of <u>damage</u> (settling, disarrangement), resulting from earth <u>movement</u> (sinking, shifting, expansion), where that movement is the outcome of specified <u>causes</u> (freezing, subsurface water, improper compaction). Of the causes listed in the policy, only improperly compacted soil – an indisputably man-made cause – could be applicable here. The only question presented for resolution here is whether that man-made cause brought about the earth movement that damaged High Street's building (*e.g.* by failing to properly absorb any vibration emanating from Concrete Express' work).

Accordingly, the Court finds that there is a genuine issue of material fact – specifically, whether the movement of the earth under and around High Street's building was due to improperly compacted soil – that must be resolved before the policy's coverage can be determined. American Family's motion for summary judgment is therefore denied.

**C. Motion to Bifurcate**

Because High Street's claims will proceed to trial, the Court turns to the parties' joint Motion to Bifurcate. The motion is fairly sparse in its argument and even more so in its request for relief. Beyond stating that "a determination of whether there is coverage in the first instance . . . is necessary before the parties and the Court can determine whether and to what extent Plaintiff's remaining claims may proceed," and requesting that "the Court issue an Order

15

bifurcating Plaintiff's claim for declaratory judgment from [its] remaining claims for breach of contract and bad faith," the Court has no understanding of <u>how</u> the parties intend this bifurcation to be effective and <u>what</u> form it will take. Is this bifurcation of claims intended to entail separate discovery schedules for the two types of claims, or merely separate trials? (Or some other peculiar division of claims?) Does bifurcation render the breach of contract claims dormant pending determination of the declaratory judgment claim, and if so, do those contract claims arise upon the Court ruling on American Family's dispositive motion, upon a verdict with regard to the declaratory judgment claim, upon the actual entry of judgment on the declaratory claim, or at some unspecified point thereafter? Does the Court's resolution of American Family's dispositive motion on the terms set forth above affect the justification for bifurcation? The parties' motion gives no clear indication of the answers to these questions.

Although the Court has no general reservations against bifurcating the claims in such a way as will promote the efficient and expeditious resolution of the controversy, the Court cannot say with any conviction that, on the record currently before it, the bifurcation requested in the motion will do so. Accordingly, the motion is denied without prejudice.

## **CONCLUSION**

For the foregoing reasons, the parties' Joint Motion to Bifurcate **(# 12)** is **DENIED** without prejudice. American Family's Motion for Summary Judgment **(# 21)** is **DENIED**. The

parties shall promptly contact the Magistrate Judge to resume proceedings in this matter consistent with his June 13, 2011 Order **(# 34)**.

Dated this 26th day of September, 2011

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge